CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 27 2013

JULIA C. DUDLEY, CLERK
BY: /s/ Moody
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

HARMON KILGORE, )
)
Plaintiff, ) Civil Action No. 2:12-cv-00015
)
v. ) **MEMORANDUM OPINION**
)
COMMONWEALTH OF VIRGINIA ) By: Hon. Glen E. Conrad
DEPARTMENT OF TRANSPORTATION, ) Chief United States District Judge
)
Defendant. )

This matter is before the court on the defendant's motion to dismiss filed pursuant to Federal Rules of Civil Procedure 12(b)(4), (b)(5), and (b)(6). For the reasons stated below, the court will grant in part and deny in part the motion.

**I.  Background**

This case arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e). The plaintiff, Harmon D. Kilgore ("Kilgore"), alleges that defendant Virginia Department of Transportation ("VDOT") discriminated against him on the basis of his race, in violation of Title VII.

In his complaint, Kilgore alleges the following set of facts. Kilgore, a Caucasian, began working for VDOT on February 16, 1990. His current position is Maintenance Operations Manager. As part of his job duties, Kilgore supervised B.J. Wolfe ("Wolfe"), an African-American working for VDOT as a "manager." Kilgore asserts that on or around July 2010, Wolfe received a twenty-eight percent pay raise, issued to bring his salary in line with his position. Kilgore alleges that Wolfe received this raise despite being unqualified for his position, as well as having exhibited a pattern of hostility and violence towards co-workers. Kilgore states that he received no concomitant pay increase even though he was underpaid for his position and

was entitled to a raise. In addition to himself, Kilgore alleges that no other Caucasian VDOT employees in Scott or Wise Counties received similar salary increases to bring their pay in line with their positions.

Kilgore also claims that during a meeting in which he was attempting to discuss Wolfe's job performance with him, Wolfe "became very violent and began cursing and yelling at plaintiff." (Id. at 3.) Wolfe then claimed that Kilgore was treating him unfairly on account of Wolfe's status as an African-American. Kilgore claims that as a result of Wolfe's allegations, on February 23, 2011, he was given a "Group II" violation by his supervisor. The charge states that it was based on "a pattern of unacceptable supervision of your direct report Mr. B.J. Wolfe," that consisted of "threats, unfair treatment and attempts to discredit Mr. Wolfe to his subordinates and . . . management . . . ." (Docket No. 11-1, Ex. A.) This violation prohibited Kilgore from applying for any future promotions or pay raises. As a result of the violation, Kilgore claims that he was not entitled to receive a $4,000 salary increase that other Caucasian employees were recently awarded in order to bring their salaries in line with their positions.

Kilgore alleges that Wolfe has a pattern of violent and threatening behavior toward his co-workers. In spite of this, Kilgore says that Wolfe has not had any comparable disciplinary action taken against him. Kilgore alleges that the discrepancy in treatment between him and Wolfe is the result of racial animus harbored against Caucasians by unidentified African-American "management employees" in VDOT's Richmond, Virginia office. The plaintiff alleges that Wolfe has received support from these Richmond employees based on their shared African-American race.

VDOT filed a motion to dismiss the complaint. The motion has been fully briefed, and with neither party requesting oral argument, is ripe for adjudication.

**II.    Standard of Review**

2

In reviewing a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6), the court must "accept as true all well-pleaded allegations" and construe those allegations in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). Although a complaint need not assert detailed factual allegations, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "In other words, the factual allegations (taken as true) must 'permit the court to infer more than the mere possibility of misconduct.'" A Soc'y Without a Name, for People Without a Home Millennium Future–Present v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Iqbal, 556 U.S. at 679).

### III. Discussion

#### A. Failure to state a claim

The court reads Kilgore's complaint as laying out two separate claims. First, he asserts that he was denied a pay raise because of his status as a Caucasian. Kilgore claims that he, as well as every other VDOT employee in his office, was entitled to have his position reviewed and to receive a concomitant pay increase at least as far back as July 2010, the same time that Wolfe received his pay raise. Although he and other Caucasian employees were eventually offered raises, he claims monetary harm for the increased sum he was due in the interim.

The second claim is for discriminatory discipline. This concerns the Group II violation Kilgore received regarding the quality of his work in supervising Wolfe. Kilgore claims this is an adverse employment action that has harmed him by disqualifying him from receiving any future raises or promotions, including the recent pay increase he claims he otherwise would have

3

been offered. He asserts that he received the disciplinary action and Wolfe did not because he is Caucasian and Wolfe is African-American.[1]

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." To state a prima facie case of unlawful discrimination under Title VII, the plaintiff must show: (1) he is a member of a protected class; (2) he was subject to an adverse employment action; (3) he was qualified; and (4) he was treated less favorably than a similarly situated employee outside of the protected class. Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999). The only element at issue in the defendant's motion to dismiss is whether Kilgore has pointed to a similarly situated comparator.[2]

When comparing different employees for Title VII purposes, "[a plaintiff] must establish that these other employees are similarly situated in all material respects." Monk v. Stuart M. Perry, Inc., 2008 WL 4450220, at *4 (W.D. Va. Sept. 29, 2008); see also Pyatt v. Harvest Hope Food Bank, 2012 WL 1098627, *7 (D.S.C. Mar. 29, 2012). To be considered similarly situated, "employees must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances

---

[1] Wolfe's original complaint also included a retaliation claim but this has since been withdrawn.

[2] The defendant makes passing reference to the fact that other circuits have recognized a slightly higher burden in cases where the plaintiff is white and alleges "reverse discrimination." In such instances, "[r]ather than showing that the plaintiff is a member of a protected class, the plaintiff must establish background circumstances which support the suspicion that the defendant is among those unusual employers who discriminate against the majority." Williams v. Force Protection Industries, Inc., 2009 WL 857400, at *10 (D.S.C. Mar. 30, 2009) (citing Tatum v. Philip Morris, Inc., 809 F. Supp. 1452 (W.D. Okla. 1992), aff'd, 16 F.3d 417 (10th Cir. 1993), cert. denied, 511 U.S. 1083 (1994); Martin-Trigona v. Board of Trustees, 668 F. Supp. 682 (D.D.C. 1987)): see also Gore v. Indiana University, 416 F.3d 590, 592 (7th Cir. 2005) ([P]laintiffs in reverse discrimination cases "must show background circumstances that demonstrate that a particular employer has reason or inclination to discriminate against whites or evidence that there is something 'fishy' about the facts at hand.") (quoting Phelan v. City of Chicago, 347 F.3d 679, 684 (7th Cir. 2003)). To the extent this higher burden applies within the Fourth Circuit, the court believes that such an inquiry is best addressed at the summary judgment stage after a record has been developed. For now, the plaintiff has alleged that the discriminatory decisions at issue were the result of top African-American management employees in VDOT's Richmond office who had a history of deferential treatment toward African-American employees. Taken as true, this suffices to establish the first element of a prima facie case of reverse discrimination.

4

that would distinguish their conduct or the employer's treatment of them for it." Richardson v. Safeway, Inc., 2012 WL 6607028, at *4 (E.D. Va. Dec. 18, 2012).

With respect to the first claim, the plaintiff casts a wide net in defining those who are similarly situated. He states, "[w]ith regard to the salary re-evaluations at VDOT, plaintiff and Wolfe were similarly situated, in that they were both VDOT employees." (Docket No. 8, at 6.) Ordinarily, merely alleging that individuals work in the same office for the same employer is insufficient to establish that co-workers are similarly situated for Title VII purposes. However, couched in the specific type of claim advanced by the plaintiff— that everyone in the office was entitled to a position review and accordant pay increase—the allegations in the complaint satisfy the similarly situated element of a Title VII claim. Accepting the plaintiff's allegations as true, Wolfe, an employee outside the protected class, received a position review and pay raise that the plaintiff, along with every other Caucasian employee in the office, were equally entitled to yet did not receive. Under this particular scenario, Wolfe and Kilgore are "similarly situated in all material respects." Monk, 2008 WL 4450220, at *4 (emphasis added). That is, they were both entitled to the same review and at least some degree of related pay increase, and the plaintiff is suing on the basis that only the individual outside the protected class received that particular benefit. The specifics of the individuals' positions and their job responsibilities are less important in finding a suitable comparator if the claim is based on a benefit to which an entire office is entitled. That said, it may later become necessary for the plaintiff to show exactly why the plaintiff and Wolfe were similarly situated with respect to the raise and their eligibility for it. At this stage in the litigation, however, the allegations suffice to state a plausible claim that the defendant unlawfully discriminated against the plaintiff in not providing him an evaluation and raise.

5

However, with regard to the plaintiff's discriminatory discipline claim, the plaintiff has not alleged facts showing that he and Wolfe were similarly situated. In fact, the allegations in the complaint establish that their positions were significantly different. They had different titles, received different salaries, and Kilgore was actually Wolfe's direct supervisor at the time the Group II violation of which the plaintiff complains was issued. Unlike in the pay raise claim, these differences are pertinent to the plaintiff's claim that the two were disciplined differently. For one thing, as a supervisor and subordinate, the two clearly held positions with different responsibilities. Kilgore's violation stated that it stemmed from his poor work in supervising Wolfe, a job duty that Wolfe obviously could not have shared. It also goes without saying that they had different supervisors. See Forrest v. Transit Mgmt. of Charlotte, Inc., 2007 WL 2348698, at *2 (4th Cir. Aug. 15, 2007) (affirming judgment as a matter of law on plaintiff's Title VII discriminatory discipline claim where employee outside protected class who engaged in comparable misconduct had a different supervisor); see also Monk v. Potter, 723 F. Supp. 2d 860 (E.D. Va. 2010) ("[T]wo employees who do not report to the same supervisor, do not have the same job title, or do not have the same responsibility level, are not similarly situated.") (citing Lightner v. City of Wilmington, North Carolina, 545 F.3d 260, 265 (4th Cir. 2008)).

Other circuits have held that employees in supervisory positions will almost never be considered similarly situated to their subordinates for disparate treatment purposes. See Burks v. Wisconsin Dep't of Transportation, 464 F.3d 744, 751 (7th Cir. 2006); Vasquez v. City of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2004); Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir. 2000). Even if such a rule does not apply within the Fourth Circuit, the fact that Kilgore was disciplined for his conduct in supervising Wolfe establishes that the two held positions with significantly different responsibilities. Although a complaint need only contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

6

misconduct alleged," Iqbal, 556 U.S. at 678, a party may not plead facts directly contrary to a necessary element of its claim and survive a motion to dismiss based on that point.

For these reasons, the court will deny the defendant's motion to dismiss the pay raise claim but will grant the motion with respect to the discriminatory discipline claim.

### B. Service of process

The defendant has also challenged the plaintiff's service of process under Rule 4 of the Federal Rules of Civil Procedure. The plaintiff served the Office of the Attorney General with his complaint. Rule 4(j)(2) states that:

> [s]ervice upon a state . . . or other governmental organization that is subject to suit must be served by:
>
> > (A) delivering a copy of the summons and the complaint to its chief executive officer; or
> > (B) serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant.

The "chief executive officer" of VDOT is the Commissioner of Highways, not the Attorney General. See Virginia Code § 33.1-3. Virginia law also directs that in a suit against a political subdivision, service should be made against the head of that entity. Id. § 8.01-300(3). In light of this, the defendant asks the court to dismiss the complaint for improper service pursuant to Fed. R. Civ. P. 12(b)(4) and/or 12(b)(5).

Although a district court may not ignore the plain requirements of Rule 4, Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc., 733 F.2d 1087, 1089 (4th Cir. 1984), "when there is actual notice, failure to strictly comply with Rule 4 may not invalidate the service of process . . . ." Maid to Perfection Global, Inc. v. Ensor, 2010 WL 1254194 (D. Md. Mar. 29, 2010). "Generally, when service of process gives the defendant actual notice of the pending action, the courts may construe Rule 4 liberally to effectuate service and uphold the jurisdiction of the

7

court." Id. (citing Karlsson v. Rabinowitz, 318 F.2d 666, 668 (4th Cir. 1963); Armco, 733 F.2d at 1089).

Here, the defendant does not deny receiving actual notice of the lawsuit. It filed responsive pleadings in a timely fashion, and has not attempted to show how the incorrect service has prejudiced its handling of the case. Given this, the court declines to invalidate service of process in this case.

## IV. Conclusion

In light of the foregoing, the court will deny the defendant's motion to dismiss with respect to the plaintiff's pay discrimination claim, but will grant the motion with respect to the discriminatory discipline claim. The court will also deny the defendant's motion to dismiss for improper service.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

**ENTER:** This 21st day of February, 2013.

_____
Chief United States District Judge