CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 3 1 2014

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
BIG STONE GAP DIVISION

| | |
|---|---|
| HARMON KILGORE, | ) |
| | ) Civil Action No. 2:12CV00015 |
| Plaintiff, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| COMMONWEALTH OF VIRGINIA | ) By: Hon. Glen E. Conrad |
| DEPARTMENT OF TRANSPORTATION, | ) Chief United States District Judge |
| | ) |
| Defendant. | ) |

This case is presently before the court on the defendant's motion for summary judgment. For the reasons set forth below, the court will grant the defendant's motion.

### Factual Background

The following facts are presented in the light most favorable to the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that on a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 151 (2000) ("[T]he court should give credence to the evidence favoring the non-movant as well as 'that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'").

Harmon Kilgore, a Caucasian man, began working for the defendant, Virginia Department of Transportation ("VDOT"), on February 16, 1990. He is currently employed by VDOT as a Maintenance Operations Manager. As part of his job duties between April 2010 and July 2010, Kilgore supervised B.J. Wolfe, an African-American man, who was working for VDOT as a manager. At that time, Jackie Christian supervised the plaintiff.

The events giving rise to the instant action took place between July and November of 2010. During a morning safety meeting on July 15, 2010, Wolfe cursed at another employee in the presence of his crew and several others. According to the plaintiff, Wolfe had a history of disruptive behavior in the workplace. In response to this outburst, Christian issued Wolfe a "Needs Improvement Notice." Shortly thereafter, Wolfe filed an internal complaint with the department, claiming that he had been "subjected to a hostile work environment and unfair treatment based on his race"; that he did not have any support from management, namely Kilgore and Christian; and that Kilgore and Christian made him feel demeaned. The complaint was accepted for investigation in August 2010. The investigators found insufficient evidence of racial discrimination. However, they also concluded that Wolfe's allegations of demeaning and unsupportive treatment by Christian and Kilgore were well founded. In response to these findings, the investigators recommended that Human Resources conduct a compensation analysis for Wolfe.

The compensation analysis revealed that Wolfe was the lowest paid employee in his band despite his above average length of service, and that he earned less than some of the VDOT employees under his supervision. To correct this disparity, VDOT awarded Wolfe an in-band adjustment equal to a 28.82% salary increase. In accordance with Department of Human Resource Management ("DHRM") Policy 3.05, which requires approval for any in-band adjustment above 10%, DHRM reviewed Wolfe's qualifications and approved the exceptional salary increase. Goldstein Decl. ¶ 4, Docket No. 33-4.

Kilgore, by contrast, did not receive a salary increase in November 2010. Instead, VDOT issued Kilgore a written notice as discipline for his mistreatment of Wolfe. After considering the plaintiff's good employment history, VDOT required Kilgore to complete additional training

instead of suspending him from work, "as would normally accompany discipline of this magnitude." Written Notice, Docket No. 33-1 at 19.

## Procedural History

Kilgore filed the instant action on July 18, 2012, asserting claims of pay discrimination and discriminatory discipline. The defendant subsequently moved to dismiss the complaint, pursuant to Federal Rules of Civil Procedure 12(b)(4), 12(b)(5), and 12(b)(6). On February 27, 2013, the court dismissed the plaintiff's discriminatory discipline claim. The court denied the defendant's motion with respect to the plaintiff's claim of pay discrimination.

Following the completion of discovery, the defendant moved for summary judgment on the pay discrimination claim. The court held a hearing on the motion on February 24, 2014. The motion has been fully briefed and is ripe for review.

## Standard of Review

An award of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-movant. Anderson, 477 U.S. at 255. To withstand a summary judgment motion, the non-movant must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. Id. at 249–50. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the non-movant's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc., 190 F.3d 285, 287 (4th Cir. 1999)).

3

## Discussion

Kilgore asserts a claim of race discrimination under Title VII. Specifically, Kilgore contends that he was denied a pay raise because of his race. Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1).

In the absence of any direct evidence of discrimination, a plaintiff may proceed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–06 (1973).[1] See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005). This framework requires the plaintiff to first establish a prima facie case of discrimination by a preponderance of the evidence. See Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If a plaintiff establishes his prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas Corp., 411 U.S. at 802–03. Once the employer comes forward with such a reason, "the burden reverts to the plaintiff to establish that the employer's non-discriminatory rationale is a pretext for intentional discrimination." Heiko v. Colombo Sav. Bank, F.S.B., 434 F.3d 249, 258 (4th Cir. 2006). This "final pretext inquiry merges with the ultimate burden of persuading the court that the plaintiff has been the victim of intentional discrimination, which at all times remains with the plaintiff." Merritt v. Old Dominion Freight Line, Inc., 601 F.3d 289, 294 (4th Cir. 2010) (internal quotation marks and alteration omitted).

---

[1] The parties have confined their arguments to the McDonnell Douglas framework.

I.   **Prima Facie Case**

To state a prima facie case under the McDonnell Douglas framework, the plaintiff must show: (1) he is a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified; and (4) he was treated less favorably than a similarly situated employee outside of the protected class. Brinkley v. Harbour Recreation Club, 180 F.3d 598, 607 (4th Cir. 1999); see also Johnson v. Mechs. & Farmers Bank, 309 F. App'x 675, 682 (4th Cir. 2009). Here, Kilgore's claim fails as a matter of law because the plaintiff cannot establish that he was treated less favorably than a similarly situated employee outside of the protected class.

When comparing different employees for Title VII purposes, a plaintiff is "required to show that [he is] similar in all relevant aspects to [his] comparator." Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010). "Such a showing would include evidence that the employees 'dealt with the same supervisor, were subject to the same standards[,] and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" Id. (quoting Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992)).

While "ordinarily, merely alleging that individuals work in the same office for the same employer is insufficient to establish that co-workers are similarly situated for Title VII purposes," the court previously recognized that if "everyone in the office was entitled to a position review and accordant pay increase," then the plaintiff and Wolfe would be "similarly situated in all material respects." Mem. Op. 5, Feb. 27, 2013, Docket No. 12. However, the court also cautioned that "it may later become necessary for the plaintiff to show exactly why the plaintiff and Wolfe were similarly situated with respect to the raise and their eligibility for it." Id. at 5. That time has arrived, and a comprehensive review of the record reveals that Kilgore

5

has put forth no evidence to support his claim that all VDOT employees were entitled to a position review and accordant pay increase in November 2010.

Moreover, the plaintiff offers no other persuasive evidence to establish that Kilgore and Wolfe were similarly situated. Kilgore directly supervised Wolfe, and the two VDOT employees had different job titles, different salaries, and different salary bands. Perhaps most importantly, the evidence shows that Wolfe was mistreated by the plaintiff, prompting the compensation analysis and resulting in-band adjustment. See Written Notice, Docket No. 33-1 ("Between April 2010 and August 2010, you [Harmon Kilgore] engaged in a pattern of unacceptable supervision of your direct report Mr. B.J. Wolfe."). Not only is the record devoid of evidence to suggest that Kilgore was similarly mistreated by his own supervisor, but also Kilgore was disciplined for mismanaging Wolfe. Given these differentiating circumstances—and the total lack of evidence suggesting that everyone in the office was entitled to a position review and accordant pay increase—the court agrees with the defendant that Wolfe and Kilgore are not similarly situated, and that Kilgore is unable to establish a prima facie case of discrimination.[2]

## II.  Pretext

Even if the plaintiff could establish a prima facie case of discrimination, Kilgore fails to carry his burden to show that VDOT's non-discriminatory rationale for awarding Wolfe a salary increase, while denying such an increase to Kilgore, is a pretext for intentional discrimination. According to the defendant, Wolfe received an in-band adjustment because the team investigating Wolfe's internal complaint recommended that VDOT conduct a compensation

---

[2] The defendant also argues that Kilgore cannot establish a prima facie case of discrimination because the plaintiff has not suffered an adverse employment action. The court need not address this argument. Even if the defendant's decision not to award Kilgore an in-band adjustment constituted an adverse employment action—a dubious assumption—Kilgore is unable to demonstrate a prima facie case for the reasons previously stated.

6

analysis for Wolfe, and that analysis revealed that Wolfe was underpaid in relation to his peers. Because the defendant has clearly met its burden of articulating a permissible reason for awarding Wolfe an in-band adjustment, Kilgore is required to show that the asserted reason is "actually a pretext for discrimination." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004). Kilgore asserts that VDOT's articulated reason is merely pretext, but the court concludes that the plaintiff has failed to carry his burden.

First, Kilgore argues that VDOT's proffered reason is pretextual because "such a huge increase by VDOT management violates VDOT's own policy." Pl.'s Br. 12, Jan. 3, 2014, Docket No. 36. In support of this argument, the plaintiff offers his own signed declaration, which states in relevant part:

> VDOT's policy has always set a maximum annual raise of ten (10) percent, unless a promotion was involved, which would allow for a maximum of fifteen (15) percent annual increase. The 1997 Broadband Pay System was the only pay system in the history of VDOT that allowed a large raise above fifteen (15) percent. The Broadband Pay System of 1997 was to help the VDOT equipment operators get in line with the rest of the State's private sector, as well as eastern Virginia. Following the end of the Broadband Pay System in 1997, there was no State policy which would have permitted a 28.82 percent annual pay increase.

Kilgore Decl. ¶ 7, Docket No. 36-6. Kilgore further declares:

> [Wolfe's] pay increase was allegedly to "bring him in line" with other employees holding his same job title. This pay increase not only violated state policy's maximum of ten (10) percent, but also violated the entire basis of the Broadband Pay System, which was to adjust annual salaries based on an employee's demonstration of his/her job skills, as well as job responsibilities.
>
> ...
>
> The sole reason for B.J. Wolfe's 28.3 percent salary increase in 2010, which amount violated state policy, as well as the criteria for the Broadband Pay System, was that he is African-American.

Id. at ¶¶ 8–9.

7

Kilgore's declaration is contradicted by the express terms of Virginia Department of Human Resource Management Policy Number 3.05 ("DHRM Policy 3.05"). DHRM Policy 3.05 defines an in-band adjustment as "[a] non-competitive pay practice that allows agency management flexibility to provide potential salary growth and career progression within a Pay Band or to resolve specific salary issues." Elliott Decl., Exhibit C at 8, Docket No. 33-2. The policy also provides that "[a]n increase of 0–10% may be granted to align an employee's salary more closely with those of other employees within the same agency who have comparable levels of training and experience, similar duties and responsibilities, similar performance and expertise, competencies, and/or knowledge and skills." Id. at 9. The agency "may request DHRM approval of exceptional in-band increases that exceed 10% during a fiscal year . . . ." Id. at 8. In light of the express terms of DHRM Policy 3.05, no reasonable jury could infer pretext based only on Kilgore's personal declaration that a 28.82% increase is against state policy.

Next, Kilgore claims that VDOT's proffered justification is pretextual because the "plaintiff was the lowest paid employee in his position in the Bristol District and was awarded nothing." Pl.'s Br. 13, Jan. 3, 2014, Docket No. 36. As an initial matter, the court notes that the plaintiff has failed to adduce any evidence to support the assertion that Kilgore was the lowest paid employee in his position in November 2010. But see Elliott Decl. ¶ 12, Docket No. 33-2 ("Moreover, unlike Wolfe, Kilgore's salary was not out of alignment with VDOT employees similarly-situated to him in the Bristol District.") (emphasis added). Even assuming that the plaintiff could provide such evidence, this alone would be insufficient to undermine VDOT's legitimate, non-discriminatory explanation. The defendant did not grant Wolfe a pay increase solely because Wolfe was the lowest paid employee in his position. Rather, the defendant granted Wolfe an in-band adjustment at the recommendation of the investigation committee,

8

which found that Wolfe had been inappropriately treated. Kilgore, quite the opposite, was disciplined based on the investigators' findings and no compensation analysis was recommended. Compl. ¶ 13, Docket No. 1; Elliott Decl. ¶ 12, Docket No. 33-2; Johnson Decl. ¶ 10, Docket No. 33-3.

Finally, as evidence of pretext, the plaintiff submits that Wolfe "was one of the lower paid employees in his job classification because he personally made the choice not to learn any new job skills," and "refuse[d] to comply with VDOT safety standards to protect his own subordinates, as well as members of the public, and thereby disqualif[ied] himself under the 1997 Broadband policy." Pl.'s Br. 13, Jan. 3, 2014, Docket No. 36. Even assuming these allegations to be true, the court does not believe that a reasonable jury could infer pretext from Wolfe's failure to comply with the terms of a compensation overhaul implemented thirteen years prior to the in-band adjustment at issue. Wolfe's alleged refusal to participate in 1997 may explain why he was at the low end of his salary band, but it does not undermine VDOT's legitimate, non-discriminatory reason for granting Wolfe an in-band adjustment in 2010.

Upon full review of the record, the court concludes that Kilgore has failed to provide evidence of pretext sufficient to refute VDOT's legitimate, non-discriminatory reason for awarding Wolfe an in-band adjustment. Therefore, the defendant's motion for summary judgment will be granted.

## Conclusion

For the reasons stated, the court will grant the defendant's motion for summary judgment. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 31st day of March, 2014.

                                                  /s/ Glen Conrad
                                      Chief United States District Judge